**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
PAUL W. GRIMM
CHIEF UNITED STATES MAGISTRATE JUDGE

101 W. LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-4560
(410) 962-3630 FAX

January 25, 2011

Judith L. Mathis, Esq.
Mathis & Mathis, P.C.
2500 Wilson Blvd. Suite 320
Arlington, VA  22201

Allen F. Loucks, AUSA
36 S. Charles Street
4th Floor
Baltimore, MD  21201

**Re: Rebekah F. Hyler-Bennett v. Michael J. Astrue, Commissioner of Social Security, PWG-09-1955**

Dear Counsel:

Pending before this Court, by the parties' consent, are Cross-Motions for Summary Judgment concerning the Commissioner's decision denying Rebekah Hyler-Bennett's claim for Supplemental Security Income ("SSI"). (Paper Nos. 8, 14, 15). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). A hearing is unnecessary. Local Rule 105.6. For the reasons that follow, this Court GRANTS the Commissioner's Motion and DENIES the Plaintiff's Motion.

Rebekah Hyler-Bennett (sometimes referred to as "Ms. Bennett" or "Claimant"), applied for SSI on September 7, 2006, alleging that she was disabled since January 2, 2002, due to two herniated discs in her back, arthritis, pinched nerves, stomach pains, depression, anxiety, asthma and obesity. (Tr. 11, 147). Her claim was denied initially and upon reconsideration. (Tr. 77-78). A hearing was held before the Honorable Judith A. Showalter, Administrative Law Judge ("ALJ"), on May 8, 2008, where Ms. Bennett appeared with counsel and testified. (Tr. 39-76). The ALJ subsequently denied her claim in a decision dated May 30, 2008. (Tr. 9-24). The ALJ found that although Claimant's depression, anxiety, post traumatic stress disorder,

lumbar facet syndrome, myofascial pain syndrome, and obesity were all "severe" impairments as defined in the Regulations, they did not meet or medically equal any of the listed impairments ("the Listings") found in the Regulations. The ALJ also determined that Claimant retained the residual functional capacity ("RFC") to perform a limited range of light work[1]. (Tr. 16-17). The ALJ found that Claimant did not have any past relevant work ("PRW"). After receiving testimony from a vocational expert ("VE") and considering her age, education, work experience, and RFC, the ALJ determined there were jobs that existed in the national and local economies in significant numbers which she could perform. Accordingly, the ALJ found Ms. Bennett was not disabled. (Tr. 16-24). On May 27, 2009, the Appeals Council denied Claimant's request for review, making her case ready for judicial review. (Tr. 1-3).

Claimant presents several arguments in support of her contention that the Commissioner's final decision is not supported by substantial evidence. Claimant argues that the ALJ improperly rejected the opinions of her treating physicians in determining whether she met a listing and in determining her RFC. She also argues that the ALJ improperly relied on the VE testimony. *See* Plaintiff's Memorandum, pp. 1-20. For the reasons that follow, I disagree and find that the ALJ's decision is supported by substantial evidence and must be affirmed.

Claimant's primary argument is that the ALJ improperly rejected the opinions of her treating psychiatrist and therapist, Dr. Rever and Ms. Gootee, CRNP. On March 27, 2008, a "Medical Assessment of Mental Status" was completed by Dr. Rever in which he stated, among other things, that Claimant's mental condition resulted in "marked" restrictions in activities of daily living, "marked" difficulties in social functioning, deficiencies in concentration resulting in frequent failure to complete tasks in a timely manner, and repeated episodes of decompensation. (Tr. 413-414). However as noted by the ALJ in her decision, Dr. Rever also stated in late January 2008 that Claimant was "doing well." A year earlier in November 2007, the doctor again noted that Claimant "reports doing well except for

---

[1] The ALJ found that Claimant could perform work that was simple, routine, and unskilled, and she could lift 20 pounds occasionally, 10 pounds frequently, sit for 6 hours and stand walk for 2 hours in an 8 hour day with occasional climbing, balancing, stooping, kneeling, crouching or crawling but no concentrated exposure to odors, dust, fumes, gases or other pulmonary irritants with only occasional changes in the work setting and only occasional contact with co-workers, the public and occasional interaction with supervisors. (Tr. 15-16).

2

finances." (Tr. 387).

The ALJ considered Dr. Rever's and Ms. Gottee's opinions, but ultimately gave them little weight, because she found that they were not supported by the relevant objective medical evidence and were not consistent with the record as whole. (Tr. 19-20).

A treating physician's opinion is given controlling weight when two conditions are met: 1) it is well-supported by medically acceptable clinical laboratory diagnostic techniques; and 2) it is consistent with other substantial evidence in the record. *See Craig* v. *Chater,* 76 F.3d 585 (4th Cir. 1996); *see also* 20 CFR §404.1527(d)(2). While treating source opinions on issues reserved to the Commissioner--such as determining a claimant's RFC--are not entitled to controlling weight, the ALJ still must evaluate all of the evidence in the case record to determine the extent to which the opinion is supported by the record. In this case, I find that the ALJ fulfilled this duty. Contrary to Claimant's argument, the ALJ did not "ignore evidence" nor did she "arbitrarily select evidence to support a denial". Rather the ALJ adequately discussed Dr. Rever and Ms. Gottees' opinions in her decision. The ALJ clearly acknowledged the treatment Ms. Bennett received from these two practitioners over an extended period, and the ALJ specifically addressed all of their various opinions and explained why she could not accord them controlling weight. For example in rejecting Dr. Rever's 2008 assessment, the ALJ noted that over the period of 16 different therapy sessions, Claimant's capabilities were at different levels, the ALJ also noted there were symptom changes in the treatment records and medication changes, but overall the ALJ found notes did not warrant marked limitations, nor did they support the 2008 assessment. (Tr. 19-21, 377-415). The ALJ also discussed the state agency reviewing physicians opinions rendered by Drs. Hakkirinen, Wessell, Moore and Ahn, regarding Claimant's physical and mental limitations and clearly stated how much weight she was affording their opinions and the reasons therefore as required. (Tr. 19-21). This evidence was properly considered by the ALJ and I find the ALJ's findings are explained adequately and are supported by substantial evidence.

With respect to the ALJ's assessment of Claimant's allegations of disabling pain, the ALJ properly relied on Claimant's own testimony as well as the findings of her treating physician, Dr. Patrick Callahan, in determining that her allegations were not totally credible. For example, Dr.

3

Callahan examined Ms. Bennett in September 2007. He noted Ms. Bennett's history of back pain, diagnosed lumbar facet syndrome and myofascial pain syndrome and in October and November 2007, administered a series lumbar facet blocks. Ms. Bennett testified that the spinal injections did not help her pain.(Tr. 51). However, as the ALJ noted, Dr. Callahan's notes recorded that the injections helped her and that her pain was reduced by 50%.(Tr. 18, 364-376). The ALJ did not rely solely on the existence or nonexistence of objective medical records in judging the intensity and persistence of her pain. Rather, the ALJ also evaluated the evidence submitted by Claimant regarding her activities, the treatments she follows, as well as considering her testimony at the hearing. (Tr. Id.). These factors, coupled with Ms. Bennett's testimony regarding her activities, were appropriately considered,[2] and they provide substantial support for the ALJ's conclusion. Accordingly, there is substantial evidence to support the ALJ's analysis of Ms. Bennett's allegations of pain.

Claimant's final argument is that the ALJ improperly failed to include limitations that she could only "walk/stand for 2 hours a day", and alleges the ALJ did not include "any other specific exertional or functional limitations", and therefore the finding that she could perform light work[3] is not

---

[2] SSR 96-7p provides: the adjudicator must consider certain factors "in addition to the objective medical evidence when assessing the credibility of an individuals statements": Those factors include 1. The individual's daily activities; 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms ; 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board ); and  7. Any other factors concerning the individuals functional limitations and restrictions due to pain or other symptoms.
SSR 96-7p (1996 WL 374186, *2 (S.S.A.))

[3] Light work is defined as
(b) *Light work.* Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless

supported by substantial evidence.

However after careful review of the hearing transcript, I disagree. For example, the ALJ included the following specific limitations in his hypothetical:

> …[p]osturals occasional, nonexertionally simple unskilled work that is not at a production pace, should not have concentrated exposure to odors, dust, acids, poor ventilation with only with occasional contact with co workers and the public work that is essentially isolated with only occasional supervision, work that is low stress and that is defined as occasional changes in the work setting. The ALJ also clarified that this person would need "to sit or stand at will, a sit/stand option."

In response, to the ALJ's hypothetical the VE testified that both the light and sedentary jobs he identified would accommodate a sit/stand option. (Tr. 72-73). Therefore the argument that Claimant's limitations—including a limitation of stand/walk for 2 hours were not adequately presented to the VE is without merit.

Claimant's counsel asked the VE to include seven moderate mental limitations that would result in an overall "3% reduction in productivity." The VE responded that work would be precluded for such an individual. Claimant argues that ALJ improperly rejected this particular portion of the VE's testimony.

However, the ALJ explained although Claimant's alleged mental limitations resulted in limitations as described by Dr. Moore- he also concluded that Ms. Bennett retained the capacity to perform "simple work related tasks on an ongoing basis." Accordingly the record does not support Claimant's claim of a 3% reduction in her abilities that would preclude her from working.(Tr. 23, 321).

---

there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

In sum the ALJ's RFC finding of light work and the hypothetical presented to the VE are supported by substantial evidence. Thus, for the reasons given, this Court GRANTS the Commissioner's Motion for Summary Judgment and DENIES Claimant's Motion. A separate Order shall issue.

        Sincerely,

        /s/
        Paul W. Grimm
        United States Magistrate Judge